UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL CORMIER,          )
                               )
          Petitioner,   )
    v.                  )       CIVIL ACTION
                               )       NO. 10-10962-FDS
JAMES SABA,            )
                               )
          Respondent.  )

**REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS**

November 30, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Petitioner, Daniel Cormier, has brought a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 following his convictions on February 8, 2005 for rape,

assault with intent to rape, and six counts of assault and battery in connection with attacks

on two women.[1]  The Massachusetts Appeals Court confirmed his convictions and the

denial of his motion for a new trial in an unpublished opinion dated August 20, 2009.

Commonwealth v. Cormier, No. 07-P-127, 2009 WL 2525164 (Mass. App. Ct. Aug. 20,

2009).  In his habeas petition, Cormier raises four grounds for relief: (1) that he was

denied his Sixth Amendment right to confrontation when the cross-examination of a

---

[1]  Cormier was sentenced to 6-7 years for rape, a consecutive sentence of 3-5 years for
assault with intent to rape another victim, and 2 years for the six counts of assault and battery, to
be served concurrent with the rape sentence.  He is presently incarcerated.

witness was limited; (2) that his waiver of his right to testify was not made knowingly and intelligently because he received deficient advice from his counsel, and that the trial judge erred in failing to grant him a hearing on this issue; (3) that his due process rights were violated by the use of impermissibly suggestive identification procedures; and (4) that his due process rights were violated by the joinder of offenses involving two different alleged victims.

After careful consideration of the record, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the habeas petition be DENIED without an evidentiary hearing.

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>The Underlying Crimes</u>

On January 26, 2001, a Suffolk County grand jury issued an 18-count indictment against Cormier in connection with attacks on three women, referred to by their initials as EW, CS and GJ.  These attacks allegedly took place on July 24, 2000 (EW), August 18, 2000 (CS) and September 10, 2000 (GJ).  The charges related to CS were dropped shortly before jury impanelment because the alleged victim refused to cooperate with the

---

[2]  The Respondent has filed a Supplemental Answer ("SA") containing the record below as Docket No. 13.  Additional transcripts were filed as Docket No. 26.

prosecution.  Cormier, 2009 WL 2525164, at *4 n.4; see also SA 381.  The facts relating

to these assaults, as described by the Massachusetts Appeals Court, are as follows.[3]

EW

> On July 24, 2000, the defendant picked up the first victim, a prosti-
> tute, in the Chinatown section of Boston in a greenish-blue Ford
> Explorer, and drove her to a secluded location.  He pummeled her on
> her face with his fists, climbed on top of her in the passenger seat,
> and, after she managed to escape from the vehicle, orally raped her.

Cormier, 2009 WL 2525164, at *1.  Cormier adds that there was evidence that after the

attack the victim took a cab to the New England Medical Center.  2/3/05 Tr. II:50-51.

Staff collected a sexual assault kit.  Id. at 90-91.  However, no physical evidence

connected to Cormier was found on the victim's body or clothing.  2/4/05 Tr. III:63.

        As described in more detail below, about a month after the attack, EW was shown a

photo array which included the defendant's picture.  Cormier, 2009 WL 2525164 at *1.

About five months after the photo identification, EW identified Cormier in a live lineup

which was videotaped.  Id.  Cormier was charged with rape and four counts of assault and

battery in connection with this incident.  SA 130-34.  Cormier has consistently maintained

that he did not attack EW, and claimed in connection with his motion for a new trial to

---

        [3] The underlying facts as found by the state courts are entitled to a presumption of
validity under 28 U.S.C. § 2254(e)(1).  See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002);
Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).  See also Rashad v. Walsh, 300 F.3d 27, 35 (1st
Cir. 2001) (without clear and convincing evidence to the contrary, a presumption of correctness
applies to the factual findings of both the appellate and trial courts).

have an alibi for the night of the attack, although no evidence of an alibi was presented at trial.  SA 148-82 (affidavits filed with motion for a new trial).

CS

Cormier was indicted on two counts of oral rape, two counts of vaginal rape, and two counts of assault and battery against CS relating to events that allegedly occurred on August 18, 2000.  SA 135-40.  As noted above, these charges against Cormier were dismissed before trial.  Nevertheless, in connection with his habeas petition, Cormier has presented some facts relating to this incident since, he contends, these are facts which should have been presented to the jury as an explanation for the subsequent altercation with GJ, discussed below.  See Pet. Mem. (Docket No. 22) at 3, 19.

Cormier did not testify at trial, but submitted an affidavit in connection with his motion for a new trial.  As he attested to therein, Cormier picked up a prostitute named CS, who was known to him, in the Combat Zone on August 18, 2000.[4]  SA 149, ¶ 2.  CS joined him in his car, and after an agreement was reached relating to payment, a State Trooper pulled up behind them.  SA 149-50, ¶¶ 3-4.  They drove off and ran into a road block.  SA 150, ¶ 5.  After a dispute about money, CS jumped out of the car naked and yelled that she had been raped.  SA 150, ¶ 5.  Cormier was arrested and charged.  SA 150-

---

[4]  While in his affidavit Cormier states this occurred in September 2000, the indictment relating to CS dates the incident as August 18, 2000 and the August date was adopted by Cormier's counsel in connection with his memorandum in support of his habeas petition.  See SA 149, ¶ 2; Pet. Mem. at 3.

51, ¶¶ 5-6.  It is his contention that CS falsely accused him of rape due to the dispute over payment.  SA 150, ¶ 6.

Cormier contends that about a week after his arrest, he went to find CS or her twin sister to try and straighten things out, and ran into her pimp, William Buford.  SA 151, ¶¶ 8-9.  He got into a physical fight with Buford, who wanted Cormier to pay him and not CS.  SA 151-52, ¶¶ 9-10.  During this fight, according to Cormier, GJ got into his car and joined in the melee, during which time she bit Cormier's arm.  SA 152, ¶ 10.  Cormier contends that it was the injuries he and GJ suffered in connection with this dispute which were wrongfully attributed to a rape of GJ.  SA 152-53, ¶¶ 10-12.

<u>GJ</u>

Cormier was charged with assault with intent to rape, one count of assault and battery with a dangerous weapon, one count of assault with a dangerous weapon, three counts of assault and battery, and one count of indecent assault and battery against GJ relating to events occurring on September 10, 2000.  SA 141-47.  As the Appeals Court describes the evidence relating to GJ, the "second" victim described at trial (since the charges relating to CS were dropped):

> On September 10, 2000, the defendant picked up the second victim, also a prostitute, in Chinatown, in a Ford Explorer (black or "like green"), drove her to a secluded location, hit her on the face with his fists, ripped a braid of her hair from her scalp, climbed on top of her in the passenger seat, and demanded sex.

Cormier, 2009 WL 2525164, at *1.  As described above, Cormier denies raping GJ.

Rather, he contends that GJ was injured, and he was bitten, in his fight with Buford and

GJ.  See SA 152-53, ¶¶ 10-12; Pet. Mem. 4-5.

## **Procedural History**

The indictment handed down on January 26, 2001 charged Cormier with rape and

four counts of assault and battery against EW, four counts of rape and two counts of

assault and battery against CS, and assault with intent to rape, assault and battery with a

dangerous weapon, assault with a dangerous weapon, three counts of assault and battery,

and indecent assault and battery on a person over fourteen against GJ.  SA 130-47.

Cormier pleaded not guilty to all counts.  SA 6-7.  Attorney Deborah Beard-Bader was

initially appointed to represent him.  SA 120, 172.  In or about January 2004, more than a

year before trial, Ms. Beard-Bader was replaced by private counsel.  SA 172.  Cormier

was represented by Attorney Thomas Butters and his associate, Matthew Thompson, at

trial.  SA 160, 168.

## Motion to Sever

On August 6, 2002, the prosecution filed a motion for joinder of all charges for

trial.  SA 121.  This motion was opposed, and Cormier filed a motion to sever on August

20, 2002, agreeing that there were sufficient similarities between the alleged assaults on

August 18 (CS) and September 10, 2000 (GJ) to allow joinder, but seeking to sever the

claims relating to the alleged July 24, 2000 attack on EW.  SA 121, 217.  On October 10,

2002, the trial court granted the government's motion for joinder and denied the defense

motion for severance, finding that there was a sufficient temporal and schematic nexus among the incidents to allow joinder.  SA 217-20.  After the government dropped the charges relating to CS, Cormier renewed his motion to sever.  SA 221.  The motion was denied after hearing.  Id.  The Appeals Court affirmed.  Cormier, 2009 WL 2525164, at *6.

Motion to Suppress

On April 28, 2004, Cormier filed a motion to suppress the out-of-court, and all subsequent in-court identifications of him by EW.  SA 123, 183-84.  Cormier contended that "the impermissibly suggestive nature of [EW]'s identification during a live lineup on January 23, 2001 created a substantial likelihood of irreparable misidentification" and a violation of his state and federal constitutional rights.  SA 183.  Evidentiary hearings were held on August 5, 2004 and September 23, 2004.  SA 123.  The court made findings and rulings, and announced its decision in court on September 28, 2004, denying the motion to suppress.  SA 193-216.  The Appeals Court affirmed.  Cormier, 2009 WL 2525164, at *2.

The Trial

The trial commenced on February 2, 2005, and testimony concluded on February 4, 2005.  SA 125.  Cormier challenges the trial court's ruling in connection with the cross-examination of GJ, which will be discussed in detail below.  Cormier did not testify at trial.  After the Commonwealth rested, the trial judge conducted a colloquy with Cormier about his decision not to testify.  See SA 243-44.  As discussed below, Cormier now

contends that his waiver of his right to testify was not made knowingly or intelligently due to a lack of information from his counsel.  The defense did not present any witnesses.

At the close of the Commonwealth's case, the court issued a directed verdict on two of the charges relating to GJ: assault and battery with a dangerous weapon and indecent assault and battery on a person over the age of fourteen.  <u>See</u> SA 418.

On February 7, 2005, after the Commonwealth and the defendant rested, but before closing arguments, the defendant failed to appear for trial, and could not be found.  SA 125, 419.  The court ordered the trial to continue in his absence.  <u>Id.</u>  On February 8, 2005, the jury acquitted Cormier of one count of assault and battery with respect to EW, and one count of assault by means of a dangerous weapon as to GJ.  <u>See</u> SA 125-26, 419; Pet. Mem. at 7.  The jury convicted him of all other charges.  <u>Id.</u>

Cormier was located and brought into court on April 4, 2005.  SA 126.  He was sentenced on April 26, 2005.  <u>Id.</u>  Trial counsel withdrew, and new counsel was appointed to represent Cormier in connection with his appeal and subsequent motion for a new trial. <u>See</u> SA 13, 127-28.  A timely appeal was filed, and the appeal was stayed pending proceedings on the expected motion for a new trial.  SA 12, 17.

<u>Motion for a New Trial</u>

On July 3, 2007, Cormier, through new counsel, filed a motion for a new trial, as well as a request for an evidentiary hearing on the motion.  SA 14, 262-99.  The motion was supported with an affidavit from Cormier himself explaining his account of the incidents (SA 148), as well as affidavits from Attorneys Beard-Bader (SA 172), Butters

(SA 160), and Thompson (SA 168),[5] and from John and Maureen Cataudella (SA 175, 180), at whose home Cormier allegedly stayed the night of the attack on EW.  The issues raised in the motion for a new trial were whether the court improperly deprived Cormier of a reasonable opportunity to cross-examine GJ, whether there was ineffective assistance of counsel in connection with the cross-examination of GJ, whether trial counsel had failed to properly advise Cormier regarding his right to testify so that there was no knowing and intelligent waiver of his right to testify, and whether Cormier should be able to submit the alibi evidence of the Cataudellas.  SA 264-65.  After hearing oral argument, the trial judge issued an extensive decision on May 16, 2008 denying the motion for a new trial.  SA 380-402.  Therein, the trial judge stated, inter alia, that she did not credit the affidavits either on the issue of the waiver of Cormier's right to testify, or in connection with the claimed  alibi.  SA 400-02.  No evidentiary hearing was held.[6]

Cormier appealed the denial of his motion for a new trial, and the appeal was consolidated with his direct appeal.  SA 15, 18.  In his direct appeal, Cormier challenged the limitation on his cross-examination of GJ, contended that his decision not to testify was not a knowing and intelligent waiver, challenged the denial of his motion to suppress, challenged the denial of his motion to sever, and challenged the trial judge's refusal to hold an evidentiary hearing.  SA 25-27.  As noted above, the Massachusetts Appeals Court

[5]  As the trial judge noted, "[t]he substance of Thompson's affidavit is virtually identical to that of Attorney Butters."  SA 394 n.3.

[6]  In his habeas petition, Cormier has not challenged the state courts' rejection of his alleged alibi defense.

issued its decision affirming the denial of the motion for a new trial and affirming the

convictions on August 20, 2009.  The Massachusetts Supreme Judicial Court denied

further appellate review on December 3, 2009.  <u>Commonwealth v. Cormier</u>, 455 Mass.

1105, 918 N.E.2d 90 (2009) (table); SA 567.  The timely habeas petition was filed on June

10, 2010.

        Additional facts will be provided below where appropriate.

### III.  <u>ANALYSIS</u>

### A.      <u>Standard of Review</u>

        The standard of review to be applied to Cormier's habeas corpus petition is set

forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  The standard allows a federal court to grant a writ of

habeas corpus only if the underlying state court adjudication "(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In undertaking

this analysis, "a habeas court must determine what arguments or theories supported the

state court's decision, and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior

decision of [the Supreme] Court."  <u>Wetzel v. Lambert</u>, 132 S. Ct. 1195, 1198, 182 L. Ed.

2d 35 (2012) (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624

-10-

(2011) (internal punctuation omitted)).  Moreover, "[i]n this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta'" of the Supreme Court decisions. Howes v. Fields, 132 S. Ct. 1181, 1187, 182 L. Ed. 2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000)).

A writ of habeas corpus is only appropriate "under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).  By contrast, relief is proper "under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  Id.  An unreasonable application is more than just error, entailing "some increment of incorrectness beyond error[.]"  McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal quotation and citation omitted); accord Bell, 535 U.S. at 694, 122 S. Ct. at 1850.  The "increment of incorrectness beyond error" "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011) (quoting McCambridge, 303 F.3d at 36).

With respect to factual findings, "the AEDPA sets out a separate and exacting standard applicable to review of a state court's factual findings."  Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (citing, inter alia, 28 U.S.C. § 2254(e)(1)).  Thus, there is a

presumption that factual findings by the state court are correct, and the habeas court must

defer to such findings.  <u>Sanna</u>, 265 F.3d at 10.  "[A] habeas petitioner can rebut this

presumption by adducing 'clear and convincing evidence'" that convinces the habeas court

"that the underlying state court's adjudication 'resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding,' [28 U.S.C.] § 2254(d)(2)."  <u>Id.</u>; <u>see also</u> <u>Teti v. Bender</u>, 507 F.3d 50, 57 (1st

Cir. 2007) (petitioner bears the burden of overcoming the presumption of correctness by

providing 'clear and convincing evidence' of the error).

Finally, a writ of habeas corpus does not lie for errors of state law.  "Federal habeas

is not an ordinary error-correcting writ."  <u>Nadworny v. Fair</u>, 872 F.2d 1093, 1096 (1st Cir.

1989).  Rather, it "exists to rescue those in custody from the failure to apply federal rights,

correctly or at all."  <u>Id.</u>  Thus, habeas relief is only available if a prisoner "is in custody in

violation of the Constitution or laws or treaties of the United States[,]" it "does not lie for

errors of state law."  <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011)

(internal quotations and citations omitted).

Applying these principles to the instant case compels the conclusion that the

petition for a writ of habeas corpus should be denied.

**B.      <u>Limitation on Cross-Examination</u>**

Cormier contends that the trial judge improperly cut off his cross-examination of

GJ, in violation of his constitutional rights, when he was precluded from asking whether a

man she had identified as her boyfriend was her pimp.  As he describes his claim:

GJ, one of the two alleged victims, was a key prosecution witness. During her cross-examination, the defense sought to challenge her veracity by establishing that one of the men who was with her when Mr. Cormier was arrested was her pimp.  Defense counsel intended to attack her credibility by using this fact as a critical stepping stone towards a confrontation in which he would seek to elicit from her facts that aligned with Mr. Cormier's account of the interaction, facts that contradicted the version of events she had given on direct examination.  By cutting off all inquiry referring to a pimp and constraining counsel's examination in this key area, the trial court rendered this line of examination a nullity and violated Mr. Cormier's Sixth Amendment confrontation right.

Pet. Mem. at 8-9.

This argument is without merit.  As an initial matter, the record does not support Cormier's contention that the trial judge "constrained" the cross-examination, other than to preclude the direct question of whether GJ's boyfriend was, in fact, her pimp.  Defense counsel was free to explore the events leading up to and surrounding her altercation with Cormier.  Moreover, the ruling by the Appeals Court rejecting this claim was not contrary to or an unreasonable application of Supreme Court law.

### 1.   Facts Relating to the Cross-Examination

The relevant facts, as found by the Appeals Court, are as follows:

During direct examination the second victim [GJ] testified that while she was at the hospital after the incident, her boyfriend and his friend came to visit her.  They were outside the hospital smoking when the defendant drove by.  She asked the men to follow him.  A chase ensued, and both cars were stopped by police.  She yelled that she had been attacked and asked the police to check the defendant's arm where she had bitten him during the struggle.  When the police saw the bite, they arrested the defendant.

Defense counsel cross-examined the second victim and elicited her acknowledgment that she had lied to the police about getting a ride to her mother's house from the defendant, and that she also had lied about where the defendant had picked her up.  After counsel asked the victim to describe her boyfriend and his friend, he asked "were either one of these men your pimp?"  The Commonwealth objected, and a lengthy sidebar ensued.

**The judge stated that counsel had to have a good faith basis, that is, admissible evidence for this question, otherwise all he was doing was embarrassing the witness.**  After discussion with the judge who showed skepticism of counsel's claims, counsel, based on information from the defendant and from his roommate's testimony at the grand jury, made a proffer as follows:

> "[A]bout an hour before she showed up at the hospital my client ran into somebody that he believed to be her pimp and her in that general vicinity, and there was a discussion about the payment of money, and that during that discussion which, you know, there was an argument, that she got into the car, she tried to get the keys out of the ignition to disable the car, and when he was trying to push her out which he indeed did push her out, she bit him in the arm and he drove away, and that he, you know, vehemently denies that he took her down to South Boston and beat the living hell out of her."

The judge in relevant part responded:

> **"Again, it seems to me ... there's no reason to ask whether somebody is a pimp.  You can ask her whether there was any involvement, you know, with the boyfriend or the friend and the defendant before she got into the car.  You can ask that, and then you can explore if you believe that there is an expiration [sic], that you, you know, you have a good faith basis for doing that, and frankly thus far it doesn't make any logical sense to me, this story, but you can explore.  If you've got, you know, some reason to believe that some other gentleman of some size did something with the defendant beforehand, you know, it can't be, again, spun out of nothing."**

-14-

**The judge reiterated that she would not let counsel use the term pimp, "but you can ask whether there's an interaction beforehand, because that's what you're trying to demonstrate."**

After the sidebar conference, counsel asked the witness a number of questions about the time she was picked up, and he then asked the questions set forth in the margin [FN3] to elicit if there had been a confrontation between the defendant and her boyfriend and her or if she had seen the defendant with another man prior to being picked up.  Her answer was "no."  Counsel then turned to another subject.

[FN3] Q:  "Was there a confrontation between either you and your boyfriend or any other man that occurred between you and your boyfriend or you and somebody else on the one hand, and Mr. Cormier before you went off to South Boston with him?"

The Court:  "I'm afraid I-"

Counsel:  "I'm sorry, was that a bad question?"

The Court:  "Just try it again because I didn't quite get the question."

**Q:  "Other than going to South Boston you say you went to South Boston with my client, correct?"**

**A:  "Yes."**

**Q:  "And you think that was sometime between nine and eleven?"**

**A:  "Yes."**

**Q:  "And before that time that you went to South Boston with just him, according to your testimony, did you see him while you were in the presence of another man?"**

**A:  (No response)**

**Q:  "Do you understand my question?"**

**A:  "If before I saw him I was with somebody else and saw him?**

**Q:  "Right."**

**A:  "Like another man?"**

**Q:  "Right."**

**A:  "No."**

**Q:  "Were there any men with you or in your vicinity near Tyler Street where you were working before you got in the car with Mr. Cormier, as you say, and went to South Boston?"**

**Prosecutor:  "Objection."**

**The Court:  "Sustained, form.  Well, do you want to withdraw the objection?  She answered no to the question.  I'll let the question in."**

**Q:  "Did you get into Mr. Cormier's car and try to take the keys out of his car in the area of Chinatown?"**

**A:  "No."**

Cormier, 2009 WL 2525164, at *3 (emphasis added).[7]  A subsequent witness, one of the detectives, later testified that GJ's boyfriend was her pimp.  Id. at *4.  As detailed above, the evidence at trial was that GJ was a prostitute.

### The State Court Decisions

Cormier challenged the court's ruling limiting his cross-examination in connection with his motion for a new trial.  In rejecting his claim, the trial judge applied the standard that an "accused in a criminal case is guaranteed the fundamental right to confront and

---

[7]  The transcript of the sidebar conference and GJ's testimony can be found at SA 227-41.

cross-examine the witnesses against him." SA 395.  While the judge acknowledged that she had erred in asking counsel to lay an evidentiary foundation based on admissible evidence before asking whether either of the men with GJ was a pimp, she further concluded that a review of the transcript confirmed that her restriction was a limited one and precluded counsel only from referring to the men as pimps.  SA 396-97.  Cormier's counsel was not precluded from inquiring about "the circumstances of GJ's work, who she was associated with, and the extent of their influence and control[.]"  SA 397.  Nor was counsel limited in questioning the witness about the events surrounding the altercation, or the witness' bias or motives.[8]  SA 397-98.  Moreover, the trial judge concluded, Cormier had failed to establish any prejudice.  SA 398.  Not only did the jury learn that Buford was GJ's pimp through another witness, but GJ was "vigorously cross-examined and impeached on other grounds, including the inconsistencies in her various accounts of the attack and her prior prostitution convictions."  Id.  Finally, the trial court concluded that Cormier's constitutional right to cross-examination was not infringed in light of the very limited restriction that had been imposed on the cross-examination.  SA 399.

The Appeals Court agreed that there had not been a violation of Cormier's constitutional rights.  After reviewing all the facts, the Court ruled as follows:

---

[8]  Attorney Butters submitted an affidavit contending that he believed that his cross-examination had been limited by the trial judge to "the single, ultimate question of whether there was some 'interaction' prior to the time my client supposedly drove off with Ms. GJ[.]"  SA 163, ¶ 10.  The trial judge, in denying the motion for a new trial, found that "[c]ounsel could not reasonably have concluded from the sidebar" that he was so limited.  SA 397 at n.4.  The Appeals Court "agree[d] with the judge's reading of the transcript."  Cormier, 2009 WL 2525164, at *4.

We have carefully read the transcript of the sidebar conference. We recognize that the judge showed skepticism as to the whole inquiry and stated the story didn't "make any logical sense" to her, was "absolutely implausible," and that counsel was, therefore, in a sensitive position and fearful of antagonizing the judge. Nevertheless, we agree with the judge's reading of the transcript. She was rightly concerned that counsel have a reasonable basis for the questions, see *Commonwealth v. Johnson*, 441 Mass. at 5 n.4, 802 N.E.2d 1025, and she also was properly concerned that the witness not be humiliated. See *Commonwealth v. Johnson*, 431 Mass. 535, 540, 728 N.E.2d 281 (2000) ("[t]here is a duty to protect [a witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"), quoting from *Alford v. United States*, 282 U.S. 687, 694, 51 S. Ct. 218, 75 L. Ed. 624 (1931).

The defendant was not denied his fundamental right to confront and cross-examine the witnesses against him. The judge did not foreclose all inquiry into a subject that could show bias or prejudice. See *Commonwealth v. Martin*, 434 Mass. 1016, 1017, 750 N.E.2d 1009 (2001). Moreover, even if the judge committed error, the defendant has not shown prejudice. In view of the negative response of the second victim to counsel's questions after the sidebar colloquy, see note 3, *supra*, it is highly unlikely that further questioning would have yielded different testimony. "[A] defendant must show a reasonable likelihood that, had the cross-examination been permitted to continue without interruption, testimony of more than minimal value to the defendant might have been forthcoming." *Commonwealth v. Fordham*, 417 Mass. 10, 19-20, 627 N.E.2d 901 (1994).

Cormier, 2009 WL 2525164, at *4-5.

## 2. <u>Standard of Review</u>

As an initial matter, the parties dispute the appropriate standard of review of the

Appeals Court's ruling. Cormier contends that this court should conduct a *de novo* review

since the state court did not adjudicate his federal constitutional issue, while the Common-

wealth contends that the state court's decision is entitled to deference because the state court did adjudicate his federal claim.  While the outcome would be the same under either standard, this court finds that the deferential standard of review is appropriate.

Pursuant to  28 U.S.C. § 2254(d), a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings" unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, or (2) was based on an unreasonable determination of the facts.  Thus, "[b]y its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Richter, 131 S. Ct. at 784.  It is well established that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning[,]" and "a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d)."  Id.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-85; see also Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012) (where petitioner raised constitutional argument and state court found "no merit" in the allegations of error, state court is deemed to have adjudicated the constitutional claim and its decision is subject to deferential review).

In the instant case, in his motion for a new trial, Cormier had presented the issue concerning the limitation on cross-examination as a violation of his "right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by art. 12 of the Commonwealth's Declaration of Rights, to confront adverse witnesses[.]"  SA 277. Similarly, in his direct appeal Cormier referred to both his state and federal constitutional rights.  See, e.g., SA 53.  In arguing his claims, however, Cormier did not distinguish between his federal and state constitutional rights.  Neither did the trial court or Appeals Court.  SA 395-99; Cormier, 2009 WL 2525164, at *5.  Where it is not "immediately apparent whether the state court was disposing of [the defendant's] federal constitution claim, or whether it was only addressing the parallel claim that [the defendant] had made under Art. XII of the Massachusetts Declaration of Rights[,]" de novo review may be appropriate, but only if the habeas court determines that "the state court had relied solely on state standards that did not implicate federal constitutional issues[.]"  Cements v. Clark, 592 F.3d 45, 53 (1st Cir. 2010) (citing DiBenedetto v. Hall, 272 F.3d 1, 6-7 (1st Cir. 2001)).

In the instant case, as detailed below, the same results would be reached under either a de novo or deferential standard.  Nevertheless, to the extent that the standard of review is significant, in this case a deferential standard is appropriate as the Appeals Court should be deemed to have addressed Cormier's federal constitutional claim on the merits. It is clear that the state court's decision "was neither a disposition on procedural grounds

nor a summary disposition in which the court simply remained silent on the issue."

Clements, 592 F.3d at 53.  Moreover, as the First Circuit has explained:

> AEDPA's trigger for deferential review is adjudication, not explanation.  When a state court has truly avoided (or merely overlooked) the petitioner's federal claim, a federal court may step into the breach and review de novo.  But judicial opacity is a far cry from judicial avoidance.  It is the result to which we owe deference, not the opinion expounding it.

Id. at 55-56 (internal citation omitted).  The First Circuit has rejected the application of

"an inflexible rule" that "would elevate form over substance to impose some sort of

requirement that busy state judges provide case citations to federal law . . . before federal

courts will give deference to state court reasoning."  Id. at 53-54 (internal quotation

omitted).  "The real question is not whether the state court opinion cited to any federal

cases, but whether the opinion addresses a fairly raised federal issue."  Id. at 54.

In the instant case, a fair reading of the state court decision is simply that there was

no need to distinguish between Cormier's federal and state constitutional rights as they

were co-extensive on the issue presented.  This conclusion is supported by the Appeals

Court's citation to Commonwealth v. Martin, 434 Mass. 1016, 1017, 750 N.E.2d 1009

(2001), a case which raised the issue whether a limitation on cross-examination violated

the defendant's "right to confront his accuser as guaranteed by both the Sixth Amendment

to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights."

Id.  In ruling that the defendant's rights in that case were violated, the Martin court did not

distinguish between the defendant's federal and state constitutional rights.  See id.

Apparently, the scope of the rights granted under the state and federal constitutions were the same.

Further evidence that the Cormier court addressed the petitioner's federal constitutional claim is found in the Appeals Court's citation to Commonwealth v. Johnson, 431 Mass. 535, 728 N.E.2d 281 (2000), in connection with its discussion of the appropriate limitations on cross-examination.  Johnson, in turn, relied on Van Arsdall, the Supreme Court case which, as detailed below, defines the "clearly established Federal law" in this area.  Specifically, as the Massachusetts Supreme Judicial Court ruled in Johnson:

> The right to cross-examine is not without limits, and it "must be accommodated to other legitimate interests." *Commonwealth v. Clifford*, 374 Mass. 293, 305, 372 N.E.2d 1267 (1978).  The Supreme Court has said that reasonable limits may be placed on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).  The Court has also noted that "[t]here is a duty to protect a witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate...." *Alford v. United States*, 282 U.S. 687, 694, 51 S. Ct. 218, 75 L. Ed. 724 (1931).

Johnson, 431 Mass. at 540, 728 N.E.2d at 285-86.  The First Circuit has recognized that "reference to state court decisions that themselves deal with federal constitutional issues may be sufficient to trigger AEDPA's heightened deference."  Clements, 592 F.3d at 54.  For these reasons, this court finds that there was a ruling on Cormier's federal constitutional claim on the merits, and the Appeals Court decision is entitled to deference.

3.      **Controlling Federal Law**

The parties agree that the controlling federal law is detailed in the case of <u>Delaware</u>

<u>v. Van Arsdall</u>, 475 U.S. 673, 106 S. Ct. 1431 (1986), where the Court confirmed that

"[t]he Confrontation Clause of the Sixth Amendment guarantees the right of an accused in

a criminal prosecution to be confronted with the witnesses against him[,]" and that "the

main and essential purpose of confrontation is to secure for the opponent the opportunity

of cross-examination." <u>Id.</u> at 678, 106 S. Ct. at 1434 (internal quotations and citations

omitted).  Moreover, the Supreme Court has recognized, "the exposure of a witness'

motivation in testifying is a proper and important function of the constitutionally protected

right of cross-examination." <u>Davis v. Alaska</u>, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L.

Ed. 2d 347 (1974).  Nevertheless, as quoted above, "trial judges retain wide latitude" to

impose reasonable limitations on cross-examination. <u>Van Arsdall</u>, 475 U.S. at 679, 106 S.

Ct. at 1435.

"The first question to be asked under the *Van Arsdall* test is whether the limitation

prejudiced the examination of that particular witness.  In other words, absent the

limitation, would the jury have received a 'significantly different impression' of the

witness's credibility?'" <u>DiBenedetto</u>, 272 F.3d at 10 (internal quotations omitted).  "The

second element of the *Van Arsdall* test is whether the error was harmless beyond a

reasonable doubt; if so, reversal is not warranted." <u>Id.</u>  Here, the Appeals Court concluded

that Cormier "was not denied his fundamental right to confront and cross-examine the

witnesses against him.  The judge did not foreclose all inquiry into a subject that could

-23-

show bias or prejudice." Cormier, 2009 WL 2525164, at *5. Moreover, the Appeals

Court concluded, Cormier had failed to show prejudice since GJ had denied either being

with anyone at the time she was picked up by Cormier, or getting into an altercation with

him. Id. and n.3. Whether viewed under a deferential standard or a de novo review, there

was no constitutional violation.

Cormier describes the effect of the judge's ruling on his case as follows:

> Here, the jury would "have received a significantly different impres-
> sion of" GJ's credibility if counsel had been permitted to ask whether
> Mr. Buford was her pimp and to follow up concerning the earlier
> interaction between her, her pimp, and Mr. Cormier. DiBenedetto,
> 272 F.3d at 10. **If GJ had admitted that Mr. Buford was her pimp,
> it would have muddied her previous statement that he was her
> boyfriend, and would have highlighted the issue of Mr. Buford's
> role for the jury.** Mr. Buford was present at the time that Mr.
> Cormier was arrested, but he was rarely mentioned by any of the
> witnesses. However, he played a key role in Mr. Cormier's account
> of the incident, pointing to the "importance of the evidence to an
> effective defense." White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005),
> cert. denied, 546 U.S. 972. **If GJ had admitted that Mr. Buford
> was her pimp, she may well have admitted other facts that could
> have aligned with Mr. Cormier's narrative. GJ's denial that Mr.
> Buford was her pimp would have been a detriment to her
> credibility, since a police witness testified that GJ told him Mr.
> Buford was her pimp. No matter how GJ answered the question,
> it would have given the jury a significantly different image of her.**

Pet. Mem. at 16-17 (emphasis added). This argument is unpersuasive. The jury knew that

GJ was a prostitute, and her credibility was challenged during cross-examination. Defense

counsel was allowed to explore the circumstances surrounding the incident so as to see

whether it "aligned with Mr. Cormier's narrative." GJ denied the prior altercation

between herself, Mr. Buford and Cormier.  There is no logic to the argument that if GJ had admitted that Buford was her pimp, and not her boyfriend, then she would have admitted that she had had a previous altercation with Cormier.

Moreover, the Appeals Court's conclusion that there was no harm is fully supported by the record.  This court would reach the same conclusion regardless whether a *de novo* or deferential standard was applied.  In determining whether an error was harmless, the "correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438.  Factors to be considered include, but are not limited to, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id.  Having Buford described as GJ's pimp as opposed to her boyfriend was not significant where the trial judge did not "deny inquiry regarding the circumstances of [GJ's] work, who she was associated with, and the extent of their influence and control[,]" or the events surrounding the assault. Cormier, 2009 WL 2525164, at *4.  Moreover, Cormier's counsel engaged in extensive cross-examination of GJ and challenged her credibility on a number of points. Id. at *3.  Even assuming that the jury could have heard GJ testify that Buford was her pimp, any error was harmless beyond a reasonable doubt.

-25-

It is only in "extreme cases" where the exclusion of evidence will result in the finding of a constitutional violation, and "not every ad hoc mistake in applying state evidence rules" supports the granting of habeas relief.  Brown v. Ruane, 630 F.3d 62, 74 (1st Cir. 2011).  This is not such an extreme case.  Where, as here, the defendant was given "an adequate opportunity to present his theory of the case," this court would find on a *de novo* review that there was no error of a constitutional dimension.  Clearly, the state court decision that there was no constitutional violation was not an unreasonable application of clearly established federal law.  Id. at 74-75.

## C.   Cormier's Waiver of His Right to Testify

After the Commonwealth rested, "the trial judge conducted a colloquy with [Cormier] to ensure that his waiver was voluntary, knowing and intelligent.  She asked him if he was aware of his absolute right to testify or not to testify, if he understood that the decision was one to make with anyone he wished including his attorneys, but in the end was his decision.  [Cormier] answered 'yes' to the judge's questions."  Cormier, 2009 WL 2525164, at * 5.  Despite this colloquy, Cormier contends that his waiver of his right to testify was not a knowing and intelligent waiver because his counsel failed to advise him following GJ's limited cross-examination that his version of events would not be placed before the jury.  Pet. Mem. at 18.  The state court's rejection of this claim was not unreasonable.

### 1.   Facts Relating to the Decision Not to Testify

Cormier's argument is contained in the affidavit he submitted to the trial judge in support of his motion for a new trial. Therein, he attested that he always wanted to testify, although his counsel had advised against it. SA 157, ¶ 20. He further contended that while he understood that it was his choice as to whether to testify or not, he did not understand that, following the judge's ruling on the examination of GJ, his side of the story would not be presented to the jury if he did not testify. SA 157-58, ¶¶ 20-21. As he explained:

> If my attorneys had told me that the jury would not get to hear my version of what happened unless I testified, there is no way I would have told the judge I wasn't going to testify. I had been struggling over what to do even with my attorneys having told me I shouldn't testify, and I nearly went against their advice. I felt strongly that I needed to tell my side of the story. Had I known my testimony was the only way to tell the jury what really happened, the decision of whether or not to testify would have been easy for me to make, and I would have testified.

SA 158, ¶ 21. According to Cormier, once he realized that the jury was not going to hear his side of the story, he fled. See id. ¶ 22. Attorney Butters attested in his affidavit in connection with the motion for a new trial that he had "forcefully advised [Cormier] not to testify[,]" and that he eventually recognized that this was the wrong advice since, given the limitations on his cross-examination of GJ, "the trier of fact was deprived of hearing any evidence that would have provided information essential to understanding how Mr. Cormier was bitten on the arm and why he was chased by [GJ] and her pimp in a car. I should have recognized at the time that providing explanations for these seemingly damning facts was essential." SA 167, ¶ 16. He further claimed:

> My advice to Mr. Cormier regarding whether he should testify was based upon my general, past experience in criminal trials. I never advised him of the ramifications of not testifying in light of the Court's restriction on my cross-examination. I did not revisit my advice that he should not testify after my cross-examination was restricted. Nor did I discuss the choice of whether or not he should testify with reference to the particular circumstances of his case as they had developed at his trial.

SA 167, ¶ 17.

In denying the motion for a new trial, the trial judge recognized that "[t]he defendant's right to testify on his own behalf is fundamental, and a strict standard applies to the waiver of that right." SA 400. As she ruled further:

> During trial, as noted, this Court conducted a colloquy with Cormier to ensure that his waiver was voluntary, knowing, and intelligent, although such a colloquy is not required in Massachusetts on either constitutional grounds or as appropriate to the fair management of a trial. See *Commonwealth v. Glacken*, 451 Mass. 163, 170 (2008). Cormier responded on the record that he understood his right to testify or not testify and that it was his decision to make. He expressed no ambivalence about whether or not to testify. **I do not credit Cormier's statement in his affidavit that he would have testified had he realized that his attorneys were not going to be able to cross-examine G.J. to get his side of the story before the jury. "It can reasonably be inferred that the defendant, after listening to the testimony of the Commonwealth witnesses, realized that the jury would not hear his version of the events unless he placed it before them."** *Commonwealth v. Degro*, 432 Mass. at **337.** Such is the case regardless of the fact that defense counsel did not specifically revisit the question of Cormier's testifying with reference to the court's evidentiary rulings and how that affected their strategy. Cf. Id. (rejecting defendant's claim that waiver of right to testify was not knowing and intelligent where defendant, knowing that self-defense claim was his best defense and that other witnesses had not presented evidence supporting such a claim, failed to inform court of desire to testify when given opportunity at the close of

> evidence).  Thus, Cormier has not met his burden of proving that his
> waiver of the right to testify was invalid.

SA 400-01.  The Appeals Court, after reviewing Cormier's argument and the trial judge's

decision, ruled that the trial judge had "acted within her discretion in not crediting this

portion of the defendant's affidavit."  Cormier, 2009 WL 2525164, at *5 (citing Common-

wealth v. Glacken, 451 Mass. 163, 170, 883 N.E.2d 1228 (2008), and Commonwealth v.

Grant, 426 Mass. 667, 673, 689 N.E.2d 1336 (1998)).  Without further discussion the

Court ruled that Cormier had "not met his burden of proving that his waiver of the right to

testify was invalid."  Id.

## 2.  **Applicable Federal Law**

"The right to testify on one's own behalf at a criminal trial has sources in several

provisions in the Constitution.  It is one of the rights that 'are essential to due process of

law in a fair adversary process.'"  Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704,

2708-09 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525,

2533 n.15, 45 L. Ed. 2d 562 (1975)).  The decision about whether to testify rests with the

defendant, and it cannot be asserted by counsel.  Id. at 52.  Courts will "not presume

acquiescence in the loss of fundamental rights" and "courts indulge every reasonable

presumption against waiver of fundamental constitutional rights[.]"  Johnson v. Zerbst,

304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938).  Moreover, any waiver of the right to

testify must be "knowing and intelligent."  Schneckloth v. Bustamonte, 412 U.S. 218, 236-

37, 93 S. Ct. 2041, 2052 (1973), and cases cited.  "This implies an understanding of the

consequences of the decision." Ouber v. Guarino, 293 F.3d 19, 31 (1st Cir. 2002)

(holding that "a defendant's waiver of the right to testify must be knowing, informed, and

intelligent").[9]

Cormier contends that the state court decision was contrary to clearly established

federal law because the Appeals Court placed the burden of proof on Cormier to establish

that his waiver was invalid. Pet. Mem. at 24. This argument is without merit, as the

burden is on Cormier under federal law to prove by a preponderance of the evidence that

"he did not competently and intelligently waive his constitutional right[.]" Johnson, 304

U.S. at 468-69, 58 S. Ct. at 1025; see also Commonwealth v. Lucien, 440 Mass. 658, 671,

801 N.E.2d 247, 258-59 (2004), and cases cited. Cormier cites to Johnson, 304 U.S. at

464, for the proposition that courts must presume that any waiver of a fundamental right

central to the fairness of a criminal trial is invalid, and that, therefore, the burden cannot

rest with the defendant to prove that his waiver of his right to testify was invalid. Pet.

Mem. at 24. This misreads Johnson. While the Johnson Court did rule that it would not

---

[9]   Cormier contends that "the state court ruling must be reviewed de novo because the appeals court never grappled with the federal constitutional right at stake." Pet. Mem. at 24. Although the state courts did not cite the federal constitutional standard in analyzing this claim, they did apply the same standard. See Cormier, 2009 WL 2525164, at * 5 (issue was whether the defendant's waiver was "voluntary, knowing and intelligent."). See also SA 400 (in ruling on the motion for new trial, the trial judge ruled that "[t]he defendant's right to testify on his own behalf is fundamental, and a strict standard applies to the waiver of that right." The right belongs to the defendant alone and waiver must be made "knowingly and intelligently" and "with sufficient awareness of the relevant circumstances and likely consequences of the decision"). For the reasons detailed above, this is sufficient to conclude that the state court addressed Cormier's federal constitutional claim on the merits. Therefore, the deferential standard of the AEDPA applies.

"presume acquiescence in the loss of fundamental rights," it nevertheless went on to rule that the burden was on the habeas petitioner to prove that he did not competently and intelligently waive his constitutional right.  Johnson, 304 U.S. at 467-68 (addressing purported waiver of fundamental constitutional right to counsel).  "[W]here, as here, the record shows the petitioner's 'affirmative acquiescence' in the arrangements at trial, the burden falls on him to show that his 'acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver.'"  Maynard v. Meachum, 545 F.2d 273, 277 (1st Cir. 1976) (quoting Carnley v. Cochran, 369 U.S. 506, 516-17, 82 S. Ct. 884, 890, 8 L. Ed. 2d 70 (1962)); accord United States v. Campbell, 874 F.2d 838, 846 (1st Cir. 1989).  Therefore, there is no merit to the contention that the Appeals Court decision placing the burden on Cormier was contrary to clearly established federal law.

### 3.    The Adjudication of Facts Without an Evidentiary Hearing

Cormier contends that the state court's conclusion that his waiver of his right to testify was knowingly and intelligently made "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Pet. Mem. at 22-23 (quoting 28 U.S.C. § 2254(d)(2)).  According to Cormier, the error was compounded by the fact that the trial court rejected Cormier's affidavit without an evidentiary hearing.  Pet. Mem. at 23.  Again, this argument is not persuasive.

The colloquy during which Cormier waived his right to testify took place after the Commonwealth had rested.  SA 243.  Even assuming that the trial judge had erred in

limiting the cross-examination of GJ, but see discussion supra, at that point GJ had denied having had an altercation with Cormier apart from the assault.  At that moment, when it was time for the defendant to put on his case, his version of events had not been put before the jury.  Since he has not suggested that there were any other witnesses besides himself who could testify to his version of events, it was not unreasonable for the trial judge to reject Cormier's assertion that he did not understand that his side of the story would not be presented to the jury if he did not testify.  See SA 400; SA 157-58, ¶¶ 20-21.

Consideration of Cormier's trial counsel's affidavit does not warrant a different conclusion.  Attorney Butters does not claim that he had other witnesses to testify as to the alleged altercation between Cormier, Buford and GJ.  See SA 166-67.  Counsel does not (and could not) contend that he (counsel) did not understand, after the Commonwealth had rested, that Cormier's story had not been presented to the jury.  Id.  Rather, Attorney Butters attested only that "[w]hen it came time for a final decision I forcefully advised [Cormier] not to testify[,]" and that he did not "revisit [his] advice that [Cormier] should not testify" after his cross-examination of GJ.  SA 167, ¶¶ 16, 17.  Attorney Butters' affidavit is silent as to whether or not Cormier understood that his side of the story was not going to be presented to the jury after the Commonwealth had rested, and does not challenge the trial judge's finding that it was appropriate to infer that Cormier, having sat through the Commonwealth's case, understood that his version of events was not being put to the jury.

"Credibility is quintessentially a matter of fact, reserved in almost every circumstance for the trier." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). The law requires a habeas court "to presume that [the state court's] factual finding is correct and to defer to it." Id. (citing, inter alia, 28 U.S.C. § 2254(e)(1)). A "habeas petitioner can rebut this presumption by adducing 'clear and convincing evidence,' 28 U.S.C. § 2254(e)(1), and a federal habeas court will issue the writ if this proffer convinces it that the underlying state court's adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" Id. (citing 28 U.S.C. §§ 2254(e)(1) and 2254(d)(2)). Here, however, Cormier has not put forth any evidence to rebut the trial court's finding that the waiver was knowingly and intelligently made, much less clear and convincing evidence — he has just asserted that the trial judge was wrong. "Since the challenged factual finding was based upon a plausible credibility determination," there is no basis for the habeas claim. Id.

The fact that the trial judge did not hold an evidentiary hearing does not alter this court's conclusion. As an initial matter, Cormier has not cited any constitutional right to an evidentiary hearing.[10] See Teti v. Bender, 507 F.3d 50, 59-61 (1st Cir. 2007) ("presumption of correctness applies to all state court's factfindings," even if court did not hold an evidentiary hearing). Moreover, Cormier has not suggested what evidence might have

---

[10] As detailed below, while an evidentiary hearing is the norm in the case of a federal prisoner's habeas petition under 28 U.S.C. § 2255, such hearings are strongly discouraged in connection with a state prisoner's habeas petition.

been adduced at such a hearing.  In rejecting his claim that he did not realize that the jury would not hear his story, the trial judge relied on her observations of Cormier during her colloquy with him, and the fact that Cormier had been present throughout the Common-wealth's case.  This is not a situation where the evidentiary record needed to be expanded.  In light of the reasonable, if not inevitable, conclusion that Cormier (and his counsel) knew that his story would not come before the court unless he testified, and Cormier's unequivocal waiver of his right to testify in the colloquy with the court, it was not unreasonable for the Appeals Court to conclude that his waiver of his right to testify was knowing and intelligent.

The case on which Cormier relies is inapposite here.  That case, Owens v. United States, 483 F.3d 48 (1st Cir. 2007), involved a federal prisoner's habeas petition under 28 U.S.C. § 2255.  In contrast to a state prisoner's claim under § 2254, evidentiary hearings must be granted in § 2255 petitions unless the "records of the case conclusively show that the prisoner is entitled to no relief."  Owens, 483 F. 3d at 57.  Compare 28 U.S.C. § 2254(e)(2) (limiting hearings in habeas petitions brought by state prisoners) with 28 U.S.C. § 2255(b) (court shall "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").  Moreover, the facts of Owen differ significantly from the instant case.  In Owens, the trial judge rejected, without a hearing, a prisoner's claim that he had not been advised of his right to testify, even though his trial counsel had filed an affidavit confirming this fact, and even though it was undisputed that the failure to give such advice was prejudicial and

amounted to ineffective assistance of counsel.  Notwithstanding the record before it, the

trial judge concluded that Owens had not presented a sufficient proffer to establish that he

had not been advised of his right to testify.  Owens, 483 F.3d at 57.

The First Circuit held that the trial judge had abused his discretion in denying the

request for a hearing since Owen's allegations were not implausible, he would be entitled

to relief if the allegations were true, and "a final determination of the merits of Owens'

claim would be best served by greater development of the facts, many of which the

Government disputes."  Id. at 60-61.  The Court also held, however, that a hearing is not

always necessary, even in connection with a § 2255 petition.  Id. at 57.  Thus, the Court

recognized that no hearing was necessary when "the movant's allegations, even if true, do

not entitle him to relief, or when the movant's allegations need not be accepted as true

because they state conclusions instead of facts, contradict the record, or are inherently

incredible."  Id. (quoting David v. United States, 134 F.3d 470, 477 (1t Cir. 1998))

(internal quotation and punctuation omitted).  That is the situation here.  In the instant

case, there was no need for a greater development of the facts, Cormier's claim of

ignorance was not supported by his counsel's affidavit, and his contention was

contradicted by the record.  Even under the Owens standard, the trial judge did not abuse

her discretion in failing to hold an evidentiary hearing.

Finally, Cormier has moved that this court grant him an evidentiary hearing in

connection with his habeas petition.  There is no basis for this court to do so.  "AEDPA's

statutory scheme is designed to strongly discourage" state prisoners from submitting new

evidence in federal court.  <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1401, 179 L. Ed. 2d 557 (2011).  In the instant case, this court is charged with determining whether the state court decision was "based on an unreasonable determination of the facts <u>in light of the evidence presented in the State court proceeding</u>."  28 U.S.C. § 2254(d)(2) (emphasis added).  Since this "review is limited to the record that was before the state court that adjudicated the claim on the merits," there is no basis for considering additional evidence that may be presented to this court.  <u>Cullen</u>, 131 S. Ct. at 1399, 1400 (concluding that evidence introduced to habeas court improperly considered under 28 U.S.C. § 2254(d)(1), which was limited to record before the state court).  Therefore, there is no basis to have an evidentiary hearing before this court.

Moreover, in order to obtain a hearing before the habeas court, a petitioner must "demonstrate that his allegations would entitle him to relief and that the hearing is likely to elicit factual support of those allegations."  <u>Companonio v. O'Brien</u>, 672 F.3d 101, 112 (1st Cir. 2012).  Cormier cannot meet this standard as there are no facts which can be adduced to challenge the fact that Cormier was present at trial, was in court when the Commonwealth rested, thereafter engaged in the colloquy with the judge, and has not indicated the existence of any other witnesses he expected to testify.

### 4.    <u>Ineffective Assistance of Counsel</u>

Finally, in his memorandum, Cormier describes the standard to assess claims of ineffective assistance of counsel as set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  Specifically, he asserts that "[f]irst

the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense." <u>See</u> Pet. Mem. at 22 (citing <u>Strickland</u>, 466 U.S. 687, 104 S. Ct. 2064).  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. 687, 104 S. Ct. 2064.  Despite quoting this standard, Cormier did not argue to this court or to the state courts that the advice counsel gave to Cormier relating to testifying on his own behalf rose to the level of ineffective assistance of counsel.[11]  Any such argument is, therefore, waived.  <u>See</u> Pet. Mem. at 22-24; <u>Giragosian v. Bettencourt</u>, 614 F.3d 25, 30 (1st Cir. 2010) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (quotations and citation omitted)).

For all these reasons, Cormier's contention that his waiver of his right to testify was not knowingly and intelligently made does not warrant the granting of habeas relief.

---

[11]  Cormier apparently suggested to the trial judge in connection with his motion for a new trial that counsel's handling of the issues relating to GJ's testimony might constitute ineffective assistance of counsel, but that argument was rejected by the trial judge and has not been pursued in the habeas petition.  <u>See</u> SA 399 n.6.

**D.**   **Denial of the Motion to Suppress**

A month after her alleged assault, EW was shown an array of eight photographs, including that of Cormier.  Cormier, 2009 WL 2525164, at *1.  Although there was conflicting testimony from EW and the detective who conducted the array as to whether EW's identification was "positive" or less assured, EW did select and initial Cormier's photograph.  Id.  Approximately five months later, EW attended an eight-person live line-up which was videotaped.  Id.  Cormier was the only person who was in both the photo array and the line-up.  Id.  Cormier argues that "[b]ecause this line-up was impermissibly suggestive, and the resulting identification unreliable, Mr. Cormier's due process rights were violated."  Pet. Mem. at 25.  Moreover, while he does not challenge the photo array as being suggestive in and of itself, he does contend that "repeatedly displaying the array likely fixed certain characteristics in the mind of the witness, which would be recalled later during the line-up."  Id. at 29.  Cormier's challenges to the line-up were rejected by the trial court and the Appeals Court.

Cormier contends that he is entitled to *de novo* review of his motion to suppress because the state courts did not address his federal constitutional issue.  Moreover, he argues that, regardless of the standard of review, the state court decisions were based on an unreasonable application of clearly established federal law.  For the reasons detailed herein, this court concludes that the state court's decision is entitled to deference, and Cormier has not met his burden of establishing either that the state court's findings of fact were unreasonable, or that its conclusion was based on an unreasonable application of

clearly established federal law.  Therefore, this court concludes that Cormier has failed to state a claim warranting habeas relief.

## 1.     Facts Relating to the Motion to Suppress

In the trial court, Cormier moved to suppress the line-up identification and all subsequent in-court identifications.  Cormier argued that his "rights have been violated under the Article of the Massachusetts Declaration of Rights and the fourth, fifth and fourteenth amendment to the United States Constitution" as a result of the line-up identification that "was so impermissibly suggestive that it has created a substantial likelihood of irreparable misidentification[.]"  SA 196.  After two days of hearings, the motion judge orally issued findings and rulings from the bench.  SA 193-216.  He concluded that "the defendant has not met his burden of showing by preponderance of the evidence, when the totality of the circumstances are considered, that [EW] was subjected by the State to an identification that was unnecessarily suggestive and conducive to irreparable misidentification, such as would deny [Cormier] of due process of law, and having made that finding then the motion to suppress must be denied."  SA 215.

The Appeals Court "agreed" with this conclusion of the motion judge.  Cormier, 2009 WL 2525164, at *2.  As the Appeals Court found:

> The defendant claims that the judge's findings were clearly erroneous and that the line-up was unduly suggestive.  The judge stated:
>
>> "after looking at the video, I see that they were all of similar clothing, they were all white men.  One I say was somewhat older, but none of them were completely out of place in the line-up as far as age goes.  But the critical thing was that there was no

specific characteristic that made the defendant stand out among the others, although there are always individual characteristics that make each one of us stand out."

We have also looked at the videotape and conclude, based on our own review, that the men depicted possessed reasonably similar features and characteristics, including hair or absence thereof, and that their clothing was also similar. See *Commonwealth v. Silva-Santiago*, 453 Mass. at 795, 906 N.E.2d 299. That the defendant was the only person in the line-up from the photo array shown five months earlier does not taint the line-up. Cf. *Commonwealth v. LaFaille*, 430 Mass. 44, 48, 712 N.E.2d 590 (1999) (duplication of defendant's photograph in an array will not by itself require suppression of identification).

In denying the motion, the judge considered the relevant factors, finding most critical that the victim had an independent source for her identification. She had the opportunity to observe the defendant face to face for twenty-five minutes at the time of the crime and, before that, had seen him driving by several times that evening.... The lighting conditions were good. She testified that she would never forget his face, and despite vigorous cross-examination by the defendant's counsel, she remained positive in her identification. That the defendant was somewhat shorter than the other men in the line-up is not significant as the victim did not rest her identification on his height, but rather on his face.

Id. Based on all this, the Appeals Court agreed that Cormier's due process rights had not been violated. Id.

Cormier argues that the line-up was "plainly suggestive" because "Mr. Cormier was the only balding man with brown hair" and was the "only balding man without facial hair." Pet. Mem. at 28. He was also the shortest man in the line-up "by a significant margin." Id. Cormier also was the only man in the line-up who had also been in the photo array, and EW had selected a balding man without facial hair from the photo array.

Id. at 29.  Moreover, according to Cormier, the victim really had not had a good

opportunity to observe her attacker since "during much of this time she was being beaten

and struggling to escape."  Id.  Cormier also points out discrepancies between the victim's

prior description of her attacker and Cormier.  Id. at 29-30.  For all these reasons, Cormier

argues, the line-up "identification was obviously suggestive and highly prejudicial, and its

admission at trial violated Mr. Cormier's rights to a fair trial under the Due Process

Clause."  Id. at 30.

### 2.    Applicable Federal Law

In determining whether an "identification and the circumstances surrounding it

failed to comport with due process requirements[,]"  a court must assess "the likelihood of

misidentification[.]"  Neil v. Biggers, 409 U.S. 188, 196, 198, 93 S. Ct. 375, 380, 381

(1972).  "A court should suppress identifications made before trial and in the courtroom

on due process grounds only if it is persuaded that there was a very substantial likelihood

of irreparable misidentification."  United States v. Rivera-Rivera, 555 F. 3d 277, 282-83

(1st Cir. 2009) (internal quotation omitted).  Thus, courts must apply a two-step analysis:

"First whether an impermissibly suggestive identification procedure was used" and

second, "whether the identification was nonetheless reliable under the totality of the

circumstances."  Id. at 283.  In determining whether the procedure was impermissibly

suggestive, the court looks at the totality of the circumstances.  Biggers, 409 U.S. at 196,

93 S. Ct. at 380 (quoting Stovall v. Denno, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 1972, 18

L. Ed. 2d 1199 (1967)).  "The five factors to be considered in assessing reliability are "(1)

the opportunity of the witness to view the criminal at the time of the crime; (2) the

witness' degree of attention; (3) the accuracy of the witness' prior description of the

defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5)

the length of time between the crime and the confrontation."  Rivera-Rivera, 555 F.3d at

284 (internal quotation omitted) (citing Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382-83).

### 3.    Standard of Review

Cormier again argues that he is entitled to *de novo* review, because the state court

did not address his federal constitutional claim.  This argument is unpersuasive.  As

quoted above, the motion judge expressly recognized that Cormier was asserting both his

state and federal constitutional rights.  SA 196.  Nevertheless, both the motion judge and

the Appeals Court expressly concluded that Cormier's "due process rights" had not been

violated.  SA 215; Cormier, 209 WL 2525164, at *2.  This is sufficient to conclude that

the state court adjudicated Cormier's federal constitutional claim.  See Brady, 666 F.3d at

54 (finding "no merit" in claims of error constitutes an adjudication of federal

constitutional claim).

### 4.    Application of Federal Law

Cormier has not established that the state court's decision was an unreasonable

application of clearly established federal law.  As the Commonwealth persuasively argues,

the Appeals Court's conclusion that Cormier had not met his burden of proving that the

line-up identification was "unnecessarily suggestive and conducive to irreparable

misidentification, such as would deny him of due process of law"

cannot be deemed objectively unreasonable given the state courts' findings that: (1) there was no specific characteristic that made petitioner stand out among the others in the line-up; (2) the men depicted in the videotape of the line-up possessed reasonably similar features and characteristics, including hair or absence thereof, and their clothing was also similar; (3) the victim had the opportunity to observe petitioner face to face for twenty-five minutes at the time of the crime and, before that, had seem him driving by several times that evening; (4) the lighting conditions were good; and (5) EW testified that she would never forget his face and remained positive in her identification despite vigorous cross-examination.

Resp. Mem. (Docket No. 24) at 20 (internal punctuation omitted).  The fact that there were some differences in the individuals depicted does not render the array unduly suggestive where, as here, "there is a high degree of similarity" among the men and the array did "not in any way draw suggestive attention" to Cormier.  See U.S. v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005); see also SA 207-15 (motion judge analyzes all of the defendant's objections to the line-up, and finds them unpersuasive).

Finally, to the extent that Cormier is arguing that the state court's assessment of the suggestiveness of the line-up was wrong, and that the "courts finding was objectively unreasonable in light of the evidence presented in the trial court proceeding[,]" he has not "presented clear and convincing evidence sufficient to overcome the presumption of correctness we afford state court factual findings in the habeas context." John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009) (citing 28 U.S.C. §§ 2254(d)(2), 2254(e)(1)).  The mere fact that Cormier would have reached a different conclusion does not warrant habeas relief.  See Wood v. Allen, 558 U.S. 290, 130 S Ct. 841, 849 (2010) (state court's factual determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance); <u>Sanna</u>, 265 F.3d at 10 (merely

insisting that the officers' testimony was untrustworthy "will not do" to challenge a state

court's findings).  Cormier has not asserted any basis for habeas relief due to any

challenge to his identification by EW.

### E.   <u>Denial of the Motion to Sever</u>

Cormier contends that the failure of the trial court to sever the charges involving

EW and GJ, a decision that was affirmed on appeal, resulted in an unfair trial in violation

of his due process rights.  According to Cormier, not only were the two incidents

unrelated, and involved different witnesses, but he had different defenses to both charges.

In the case of EW he contends that there was a misidentification by the alleged victim,

while in the case of GJ he contends that he had a physical fight with her pimp which

resulted in the bruising about which she complained.  By trying the cases together,

Cormier argues, the court impermissibly allowed the jury to hear evidence regarding the

character and other conduct of the defendant which normally would be excluded because

it could confuse and prejudice the jury.  Finally, Cormier argues that this issue should be

decided *de novo*, because the state court failed to consider his constitutional claim.  Pet.

Mem. at 30-33.

For the reasons detailed herein, this court concludes that Cormier has failed to state

a claim for habeas relief.  As an initial matter, there is no clearly established Supreme

Court law setting forth any standard governing a motion to sever.  Moreover, Cormier has

failed to establish that the state court decision was an unreasonable application of clearly established federal due process law.

### 1.    Facts Relating to the Motion to Sever

As described above, Cormier was originally charged with attacks on three prostitutes.  The prosecution filed a motion for joinder of all charges for trial.  SA 121.  Cormier opposed the joinder, and filed a motion to sever the claims relating to the July 24, 2000 alleged attack on the first alleged victim, EW, acknowledging that there were sufficient similarities between the August 18, 2000 alleged attack on CS, and the September 10, 2000 alleged attack on GJ to try those charges together.  SA 217.

In allowing the joinder of the charges, the motion judge acknowledged that the court "must weigh the defendant's right to a fair and just trial with the judicial efficiency achieved through joinder.  . . .  If the offenses are sufficiently related, the Court should join the indictments unless doing so is against the best interests of justice."  SA 218 (internal citations omitted).  Applying this standard, the motion judge concluded that the three attacks in a three-month period, each beginning in the same area of Chinatown and each taking place in the same vehicle, were "sufficiently related in time and location to establish a temporal nexus."  SA 219.  She also found that there was evidence of a common scheme or plan.  SA 218.  As the motion judge concluded:

> There is a schematic nexus among the indictments at bar: the victims were all prostitutes; their assailant picked them up in Boston's Chinatown[FN1] in the early morning hours; he approached the victims in a 1993 blue Ford Explorer and made arrangements for a "date"; the victims entered the assailant's car; the assailant drove the

victims to secluded locations in downtown Boston; he became enraged when the women asked him to wear a condom; almost immediately upon arrival at the secluded locations, he began punching the women in the face repeatedly and demanding sex; he sexually assaulted the women in the passenger's seat of his vehicle; when the victims struggled, he told them he was going to continue to rape and beat them[FN2]; and he pursued the victims after they escaped from his vehicle.  Taken in their totality, these similarities point to a unique pattern of conduct allegedly engaged in by the Defendant.

> [FN1]  Two of the victims were picked up on Tyler Street, the other on Oak Street in Boston's Chinatown.

> [FN2]  The attacker told the first victim, "I'm going to get it anyway."  He told the second victim that she liked being raped. He told the third victim that, if she did not have sex with him, he would "beat it out of her."

SA 218-19.

On the day of trial, the charges against the second alleged victim, CS, were dismissed as she refused to cooperate.  Cormier then renewed his motion to sever.  SA 221.  A hearing was held before the trial judge, who was not the same judge who had heard the original motion.  Id.  The Commonwealth described the anticipated evidence in detail, confirming a number of similarities including, without limitation, that both victims were young prostitutes who were picked up in the same area, that the same vehicle was involved in both attacks, and that in both cases the attacker "would start punching them about in the face, and he would demand that he was going to get sex from them no matter what, and in both, the victims took out condoms to be used for the sexual act, and that's when they both describe how he went off."  2/1/05 Tr. 24-26.  The trial judge considered,

but rejected Cormier's counsel's arguments to the effect that there was nothing unusual about the alleged attacks on prostitutes in Chinatown which would render it a common scheme. Id. at 27-28. The trial judge recognized the potential prejudice to the defendant in admitting evidence of two alleged crimes, but noted that the standard is "whether the defendant has shown that the prejudice resulting from a trial including both victims is so compelling that it prevents him from obtaining a fair trial." Id. at 28. She concluded that given the "similarity of the expected evidence . . . in terms of time, location, [and] modus operandi[,]" "the probative value outweighs the potentially prejudicial effect of the evidence." Id. at 28-29. Therefore, the motion to sever was denied. SA 221.

The Appeals Court affirmed, finding that the trial judge had not abused her discretion in joining the charges given their "factual similarities and closeness of time and space." Cormier, 2009 WL 2525164, at *6 (citing Commonwealth v. Pillai, 445 Mass. 175, 180, 833 N.E.2d 1160 (2005)). The Appeals Court ruled:

> The judge's decision was warranted. Both victims were prostitutes, both were picked up by the defendant in Chinatown in a Ford Explorer, both were driven to secluded locations where they were beaten on the face with the defendant's fists.

Id.[12]

Cormier does not address the similarities between the crimes at all. Pet. Mem. at 30-33. Rather, he argues, the Appeals Court improperly considered him to be a link

---

[12] While there was some indication that the victims differed as to whether the vehicle was "greenish blue" or "black or like green," they both agreed that it was a Ford Explorer. See Cormier, 2525164, at *1.

between both crimes, and that it was not unusual for prostitutes to be "picked up in an area known for prostitution" and driven to a secluded place, or for victims of assault to be hit in the face.  Id. at 31-32.  He further argues that it was prejudicial to try the cases together because the evidence of one crime would not likely have been admissible in the trial of the other, "and it is likely that the existence of two charges greatly increased the jury's willingness to convict."  Id. at 33.  Cormier concludes that because of this prejudice, his due process rights were violated.

### 2.    Applicable Federal Law

As an initial matter, there is no Supreme Court law on point addressing the situation presented to the Cormier court.  "A threshold determination that no holding of the Supreme Court required application to the factual context presented by the petitioner's claim is dispositive in the habeas analysis."  Brown v. Ruane, 630 F.3d 62, 68 (1st Cir. 2011).  Where, as here, there is no Supreme Court case "that addresses the claim that, in the circumstances presented here, a court's failure to sever indictments (or counts in a single indictment) violates a defendant's right to a fair trial under the Due Process Clause[,]" a habeas petitioner cannot sustain his burden of establishing that the state court's "decision as to the severance claim was contrary to, or an unreasonable application of, Supreme Court precedent."  Simpson v. Spencer, 372 F. Supp. 2d 140, 158 (D. Mass. 2005).  For this reason, the habeas petition should be denied.

Moreover, the Supreme Court has noted that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional

violation only if it results in prejudice so great as to deny a defendant his [constitutional] right to a fair trial." <u>United States v. Lane</u>, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 730 n.8 (1986). "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant." <u>Webber v. Scott</u>, 390 F.3d 1169, 1178 (10th Cir. 2004) (relied on by Cormier). Even assuming that misjoinder exists, however, the federal courts apply "the harmless-error inquiry appropriate for non-constitutional error: was the putative error likely to have 'had substantial and injurious effect or influence in determining the jury's verdict?'" <u>United States v. Bruck</u>, 152 F.3d 40, 44 (1st Cir. 1998) (quoting <u>Lane</u>, 474 U.S. at 449, 106 S. Ct. at 732) (additional quotations omitted). Applying these principles to the instant case compels the conclusion that the habeas petition should be denied.

### 3.    <u>Standard of Review</u>

Cormier contends that this court should undertake a *de novo* review of the decision to allow the joinder of the charges because the state courts did not address his federal constitutional claims.[13] The cases cited by the Appeals Court also do not expressly mention any federal cases, although they speak in terms of a "fair trial" — the same standard as applied by the federal courts. Thus, the Appeals Court cited to <u>Commonwealth v. Pillai</u>, which identified the issue as being whether, if unrelated offenses are

---

[13] Cormier first cited his Fourteenth Amendment due process rights in his Application for Further Appellate Review following the Appeals Court decision. <u>See</u> Pet. Mem. at 31 n.4.

joined, the "prejudice from joinder was so compelling that it prevented [the defendant] from obtaining a fair trial." Pillai, 445 Mass. at 180, 833 N.E.2d at 1166 (quoting Commonwealth v. Gaynor, 443 Mass. 245, 260, 820 N.E.2d 233 (2005), which, in turn, cites additional state law cases). Despite the absence of any citations to federal cases, however, the state court clearly applied the federal constitutional standard — namely, whether Cormier was deprived of a fair trial. Consequently, this court would recommend the application of a deferential standard of review. See Richter, 131 S. Ct. at 784-85. As detailed below, however, the same result would be reached regardless of the standard applied.

### 4. **Application of Federal Law**

A habeas court "cannot deem a state court's application of federal law unreasonable when federal courts – typically, the circuit courts of appeals – regularly resolve cases in a similar fashion." Bui v. DiPaolo, 170 F.3d 232, 243 (1st Cir. 2005). "In determining whether offenses should be joined for trial, the First Circuit historically has considered whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." United States v. Cartagena-Merced, 986 F. Supp. 698, 702 (D. P.R. 1997) (quotations omitted). Similarly, the court considers whether there is a "substantial identity of facts or participants' underlying the charged offenses" and whether the "acts and transactions of one offense" are "relevant to the other offense." Id. (quotations omitted). As detailed above, these are the factors that the state courts considered in Cormier's case,

and there was ample support for the courts' conclusion for the reasons stated by the trial court.  Thus, without limitation, the attacks involved young prostitutes in the same general area, the attacker drove a Ford Explorer, the conversations he had with the victims were similar, and the type of assault, i.e., a beating without weapons, was similar.  The attacks also took place close in time.  These factors support the joinder of the charges.

Webber v. Scott, relied on by Cormier, provides further support for this conclusion. There Webber was tried on 27 counts of sexual misconduct involving seven different victims.  Following the affirmance of his conviction, he filed a habeas petition challenging the joinder of all the charges.  He argued that "he was denied a right to a fair trial because the offenses enumerated in Counts 19-27 were supported by witnesses with greater credibility than the witnesses supporting the charges in Counts 1-18 and, furthermore, that the allegations in Counts 1-18 involve more explicit sexual acts than the 'horseplay' in the allegations in Counts 19-27." Webber, 390 F.3d at 1177.  In ruling that the defendant had "failed to demonstrate the requisite prejudice which would render the trial so fundamentally unfair as to entitle Webber to habeas relief[,]" the court noted that all the witnesses had testified, and the jury was not likely to confuse the witnesses. Id.  Moreover, the evidence was "cross-admissible to show modus operandi or a common pattern." Id.[14]  Similarly, in the instant case the jury heard the testimony from both witnesses and the jurors were not

---

[14]  The court also noted that "Webber testified in his own defense and his defense was the same to all charges: denial of involvement." Id.  In the instant case, while Cormier contends that he had different defenses, as noted above he did not testify and did not present evidence of such defenses through the testimony of any witnesses.

likely to be confused.  The evidence could have been cross-admissible to show a common

pattern if the charges were tried separately.  Cormier, like Webber, has failed to establish

that the state courts' decision was "contrary to or an unreasonable application of federal

law.  Hence, [Cormier] is not entitled to habeas relief on his claim of improper joinder."

Id.

Finally, the First Circuit has recognized that, "[d]espite the potential prejudice,"

habeas relief is not appropriate even if "much of the evidence" of one charge would have

been irrelevant and inadmissible in a separate trial on another, joined, charge.  Jervis v.

Hall, 622 F.2d 19, 21 (1st Cir. 1980).  "[S]o long as a legitimate state purpose was served

by the admission of prior-crime evidence, its admission [is] not subject to constitutional

attack" since "the jury is expected to follow instructions in limiting this evidence to its

proper function[.]"  Id. at 22 (citing Spencer v. Texas, 385 U.S. 554, 87 S. Ct. 648, 17 L.

Ed. 2d 606 (1967)).  Here, the joinder served the legitimate state purpose of conserving

judicial resources, and there is no evidence that the jury failed to follow the court's

instructions.  In fact, since the jury acquitted Cormier of one count with respect to EW,

and one count with respect to GJ, the jury clearly paid attention to the instructions and

evidence.  The fact that there may have been some prejudice as a result of the joinder does

not state a basis for habeas relief.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the habeas petition be DENIED without an evidentiary hearing.[15]

　　　　　　　　　　　　　　　　　　_ / s / Judith Gail Dein_____
　　　　　　　　　　　　　　　　　　Judith Gail Dein
　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

---

[15] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).