UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL CORMIER, | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil Action No. |
| v. | ) 10-10962-FDS |
| | ) |
| JAMES SABA, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM AND ORDER ON
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

**SAYLOR, J.**

This is a habeas corpus proceeding under 28 U.S.C. § 2254(d). Petitioner Daniel Cormier was convicted by a jury in state court of one count of rape, one count of assault with intent to rape, and six counts of assault and battery in connection with attacks on two women.

Petitioner alleges four grounds for relief: (1) that his Sixth Amendment right to confrontation was violated by the trial judge's limitation on his counsel's cross-examination of a witness; (2) that his waiver of his right to testify was not made knowingly and intelligently, and that the trial judge erred in failing to grant him a hearing on the issue; (3) that his due process rights were violated by the use of impermissibly suggestive identification procedures; and (4) that his due process rights were violated by the joinder of offenses involving two different victims.

The matter was referred to United States Magistrate Judge Judith Gail Dein pursuant to 28 U.S.C. § 636(b)(1) for findings and recommendations. On November 30, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the petition be

denied. Petitioner filed a timely objection to the Report and Recommendation on February 14, 2013. He objected to all of the Magistrate Judge's findings, pointing to the facts and reasoning in his prior filings and setting out additional argument as grounds for his objections.

Upon *de novo* review, the Court adopts the Report and Recommendation of the Magistrate Judge.

## I.   Background

### A.   Factual Background

The facts surrounding the crimes that led to petitioner's conviction are set out in the decision of the Massachusetts Appeals Court and are entitled to a presumption of correctness on habeas review. 28 U.S.C. § 2254(e)(1). The Appeals Court described the facts relating to the crimes as follows:

> On July 24, 2000, the defendant picked up the first victim, a prostitute, in the Chinatown section of Boston in a greenish-blue Ford Explorer, and drover her to a secluded location. He pummeled her on her face with his fists, climbed on top of her in the passenger seat, and, after she managed to escape from the vehicle, orally raped her. On September 10, 2000, the defendant picked up the second victim, also a prostitute, in Chinatown, in a Ford Explorer (black or 'like green'), drover her to a secluded location, hit her on the face with his fists, ripped a braid of her hair from her scalp, climbed on top of her in the passenger seat, and demanded sex.

*Commonwealth v. Cormier*, 2009 WL 2525164 (Mass. App. Ct. Aug 20, 2009).

A month after the first assault, the first victim—referred to as "EW"—was shown a array of eight photographs, including one of Cormier. *Id.* She was told that the police had a suspect, and that her attacker might or might not be represented in the photo array. *Id.* Although the witness's testimony and the detective's testimony conflicted somewhat in terms of how definitively she identified Cormier's photo, both agreed that she selected the photo and initialed the corner. *Id.*

Five months later, EW attended an eight-person live line-up, which was videotaped. Cormier was the only person who was in both the photo array and the in-person line-up. Although the state appeals court opinion never explicitly says that EW positively identified Cormier at the line-up, it appears to be uncontested that she did.

### B. Procedural Background

On January 26, 2001, a Suffolk County grand jury indicted Cormier for the attacks against both women.[1] He pleaded not guilty to all counts.

On August 6, 2002, the government filed a motion for joinder of all charges at trial. Cormier opposed the motion, and shortly thereafter filed a motion to sever. On October 2002, the trial court granted the government's motion for joinder, and denied the motion to sever. Cormier later renewed his motion to sever, which was again denied.

On April 28, 2004, Cormier filed a motion to suppress the identifications of him made by EW, contending that they created a substantial likelihood of irreparable misidentification and violated his state and federal constitutional rights. The court held evidentiary hearings on August 5 and September 3, 2004. The court then denied the motion on September 28, 2004.

A jury trial began on February 2, 2005. During presentation of the government's case, a dispute arose over a line of cross-examination that Cormier's counsel sought to explore. The Appeals Court found the relevant facts as follows:

> During direct examination[,] the second victim [referred to as GJ] testified that while she was at the hospital after the incident, her boyfriend and his friend came to visit her. They were outside the hospital smoking when the defendant drove by. She asked the men to follow him. A chase ensued, and both cars were

---

[1] The indictment also included counts connected to an alleged attack against a third woman. Those charges were dropped before the trial commenced because the alleged victim refused to cooperate. *Cormier*, 2009 WL 2525164, at *4 n.4.

stopped by police. She yelled that she had been attacked and asked the police to check the defendant's arm where she had bitten him during the struggle. When the police saw the bite, they arrested the defendant.

Defense counsel cross-examined the second victim and elicited her acknowledgment that she had lied to the police about getting a ride to her mother's house from the defendant, and that she also had lied about where the defendant had picked her up. After counsel asked the victim to describe her boyfriend and his friend, he asked "were either one of these men your pimp?" The Commonwealth objected, and a lengthy sidebar ensued.

The judge stated that counsel had to have a good faith basis, that is, admissible evidence for this question, otherwise all he was doing was embarrassing the witness. After discussion with the judge who showed skepticism of counsel's claims, counsel, based on information from the defendant and from his roommate's testimony at the grand jury, made a proffer as follows:

"[A]bout an hour before she showed up at the hospital my client ran into somebody that he believed to be her pimp and her in that general vicinity, and there was a discussion about the payment of money, and that during that discussion which, you know, there was an argument, that she got into the car, she tried to get the keys out of the ignition to disable the car, and when he was trying to push her out which he indeed did push her out, she bit him in the arm and he drove away, and that he, you know, vehemently denies that he took her down to South Boston and beat the living hell out of her."

The judge in relevant part responded:

"Again, it seems to me . . . there's no reason to ask whether somebody is a pimp. You can ask her whether there was any involvement, you know, with the boyfriend or the friend and the defendant before she got into the car. You can ask that, and then you can explore if you believe that there is an [explanation], that you, you know, you have a good faith basis for doing that, and frankly thus far it doesn't make any logical sense to me, this story, but you can explore. If you've got, you know, some reason to believe that some other gentleman of some size did something with the defendant beforehand, you know, it can't be, again, spun out of nothing."

The judge reiterated that she would not let counsel use the term pimp, "but you can ask whether there's an interaction beforehand, because that's what you're trying to demonstrate."

After the sidebar conference, counsel asked the witness a number of questions about the time she was picked up, and he then asked the questions set forth in the

4

margin [FN3] to elicit if there had been a confrontation between the defendant and her boyfriend and her or if she had seen the defendant with another man prior to being picked up.  Her answer was "no."  Counsel then turned to another subject.

[FN3] Q: "Was there a confrontation between either you and your boyfriend or any other man that occurred between you and your boyfriend or you and somebody else on the one hand, and Mr. Cormier before you went off to South Boston with him?"

The Court: "I'm afraid I-"

Counsel: "I'm sorry, was that a bad question?"

The Court: "Just try it again because I didn't quite get the question."

Q: "Other than going to South Boston you say you went to South Boston with my client, correct?"

A: "Yes."

Q: "And you think that was sometime between nine and eleven?"

A: "Yes."

Q: "And before that time that you went to South Boston with just him, according to your testimony, did you see him while you were in the presence of another man?"

A: (No response)

Q: "Do you understand my question?"

A: "If before I saw him I was with somebody else and saw him?"

Q: "Right."

A: "Like another man?"

Q: "Right."

A: "No."

Q: "Were there any men with you or in your vicinity near Tyler Street where you

>were working before you got in the car with Mr. Cormier, as you say, and went to South Boston?"
>
>Prosecutor: "Objection."
>
>The Court: "Sustained, form. Well, do you want to withdraw the objection? She answered no to the question. I'll let the question in."
>
>Q: "Did you get into Mr. Cormier's car and try to take the keys out of his car in the area of Chinatown?"
>
>A: "No."

*Cormier*, 2009 WL 2525164, at *3.

Cormier did not testify at trial, and the defense did not present any other witnesses. After the Commonwealth rested, the trial judge conducted a colloquy with the defendant. The Massachusetts Appeals Courts describes that colloquy as follows:

>[The judge] asked him if he was aware of his absolute right to testify or not to testify, if he understood that the decision was one to make with anyone he wished including his attorneys, but in the end was his decision. The defendant answered "yes" to the judge's questions.

*Id.* at *5.

On February 8, 2005, the jury returned its verdict.[2] Cormier was acquitted of one count of assault and battery with respect to EW, and one count of assault by means of a dangerous weapon as to GJ. He was convicted of all other charges decided by the jury.[3] On April 4, he was sentenced six to seven years for rape, a consecutive sentence of three to five years for assault with intent to rape, and two years for the six counts of assault and battery, to be served

---

[2] Cormier failed to appear for trial on February 7; the court ordered the trial to continue without him. He was located and brought to court on April 4, 2005.

[3] At the close of the Commonwealth's case, the court issued a directed verdict on one count of assault and battery with a dangerous weapon, and one count of indecent assault and battery on a person over the age of fourteen.

concurrently with the rape sentence.

Following his conviction, Cormier—through new counsel—appealed his conviction, filed a motion for a new trial, and requested an evidentiary hearing on the motion. On May 16, 2008, the trial judge denied his motion for a new trial. Cormier appealed that denial, and the appeal was consolidated with his direct appeal. On August 20, 2009, the Massachusetts Appeals Court issued a decision affirming both the convictions and the denial of the motion for a new trial. An application for leave to obtain further appellate review was denied by the Massachusetts Supreme Judicial Court on December 3, 2009. *Commonwealth v. Cormier*, 455 Mass. 1105 (2009).

The present habeas petition was filed on June 10, 2010. It was referred to Magistrate Judge Dein for a report and recommendation. That report and recommendation was issued on November 30, 2012. Cormier filed a timely objection.

## II.     The Standard for Habeas Review

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.    Analysis

### A.     Sixth Amendment Right to Cross-Examination

Petitioner contends that the trial judge violated his constitutional rights by improperly

constraining his cross-examination of GJ when the judge precluded Cormier's counsel from asking GJ whether the man she identified as her boyfriend was actually her "pimp."

The Appeals Court determined that "[t]he defendant was not denied his fundamental right to confront and cross-examine the witnesses against him." *Cormier*, 2009 WL 2525164, at *5. The Magistrate Judge's report recommended that petitioner's claim be dismissed under the deferential standard of § 2254(d) because the Appeals Court's conclusions were supported by the record and were not contrary to, or an unreasonable application of, clearly established federal law. Petitioner objects to that report in three respects: first, he contends that his claim should be reviewed *de novo*, rather than under the deferential standard set forth in § 2254(d); second, he contends that his right to cross-examine was unconstitutionally restricted; and third, he contends that he was harmed or prejudiced by the restriction.

Upon *de novo* review of the Magistrate Judge's report, the Court concludes that deferential review is appropriate here. Petitioner's briefing before the Appeals Court referred to both his state and federal constitutional rights. The Appeals Court analyzed the merits of petitioner's claim, and determined that petitioner "was not denied his fundamental right to confront and cross-examine the witnesses against him." As the First Circuit has explained, "AEDPA's trigger for deferential review is adjudication, not explanation." *Clements v. Clarke*, 592 F.3d 45, 53 (1st Cir. 2010). In other words, "[t]he real question is not whether the state court opinion cited to any federal cases, but whether the opinion addresses a fairly raised federal issue." *Id.* at 54. Here, it appears that the state court analyzed petitioner's federal and state constitutional claims together, and the Appeals Court decision is entitled to deference.

Petitioner has not established that the state court's decision was contrary to, or an

8

unreasonable application of, clearly established federal law. A defendant has a Sixth Amendment right to confront the witnesses against him; included in that right is the opportunity for cross-examination. Nonetheless, a trial judge "retain[s] wide latitude" to impose reasonable limitations on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As set forth in *Van Arsdall*, a reviewing court must ask two questions: (1) whether the limitation prejudiced the examination of that particular witness, and (2) whether the error was harmless.

The Appeals Court determined that petitioner was not denied his constitutional right of cross-examination because "[t]he judge did not foreclose all inquiry into a subject that could show bias or prejudice." The court further concluded that any alleged error had not resulted in prejudice, because it was "highly unlikely that further questioning would have yielded different testimony." *Cormier*, 2009 WL 2525164, at *5.

Neither of these determinations are unreasonable. Although petitioner claims that "[t]he transcript demonstrates that the trial court strictly limited cross-examination to a single question," this Court agrees with the Appeals Court and the Magistrate Judge that the trial judge did not unreasonably foreclose inquiry into the subject. She simply precluded petitioner's counsel from using the word "pimp." Further, given that the witness denied that there had been any prior altercation, and even that she had been with anyone at the time in question, there is no reason to believe that she would have answered differently if defense counsel was permitted to go down the desired line of questioning. The Appeals Court's determinations that defendant was given an adequate opportunity to present his case, and that he was not prejudiced by the exclusion, are neither contrary to, nor unreasonable applications of, federal law.

Accordingly, the claim based on the limitation on cross-examination is without merit.

### B.  Waiver of Petitioner's Right to Testify

Petitioner next contends that his waiver of his right to testify was not voluntary, knowing, and intelligent.  He contends that his counsel failed to advise him that because of the trial court's limitation on cross-examination of GJ, his version of events could only be heard if he testified.

Petitioner submitted two affidavits to the Appeals Court in support of this claim.  The first, which he executed, attested that he always wanted to testify, and that his counsel advised against it.  It further attested that he did not understand that his side of the story would not be presented to the jury if he did not testify.  The second, executed by his trial counsel, attested that counsel had strongly advised him not to testify.  It further attested that counsel never advised him "of the ramifications of not testifying in light of the court's restriction on [GJ's] cross-examination," and that counsel later recognized that his advice was incorrect.  These affidavits were both presented to the trial judge with petitioner's motion for a new trial, and were before the Appeals Court during the consolidated appeal.

In denying the motion for a new trial, the trial judge stated that she did not credit petitioner's statement that he would have testified if he had realized it was the only way he could get his story before the jury.  She cited to *Commonwealth v. Degro*, 432 Mass. 319, 337 (2000), for the proposition that "[i]t can reasonably be inferred that a defendant, after listening to the testimony of the Commonwealth witnesses, realized that the jury would not hear his version of the events unless he placed it before them."  As a result, she found that petitioner "ha[d] not met his burden of proving that his waiver of the right to testify was invalid."  The Appeals Court, upon review, determined that the trial judge had acted within her discretion in not crediting petitioner's affidavit.  *Cormier*, 2009 WL 2525164, at *5.  The court further stated that defendant

had not met his burden of proving that his waiver of the right to testify was invalid.  *Id.*, citing *Commonwealth v. Lucien*, 440 Mass. 658 (2004).

Petitioner challenges the state court's decision as an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  He also challenges the Appeals Court's decision as contrary to clearly established federal law, because it placed the burden on him to establish that his waiver was invalid.  The Magistrate Judge rejected both of petitioner's bases for relief.

With respect to petitioner's claim of an unreasonable determination of the facts in light of the evidence under § 2254(d)(2), this Court agrees with the Magistrate Judge's determination that the state court did not make an unreasonable determination of the facts.  The Appeals Court determined that the trial court made a proper credibility determination that petitioner's waiver of his right to testify was knowing and voluntary.  The evidence included the trial court's own participation in a colloquy with the petitioner, during which he indicated that he knew he had the right to testify, and knew the decision was his own.  The court's determination that petitioner waived his right knowingly was based in large part on his own statements.  In light of those statements, the determination that petitioner's assertion that he did not understand the consequences of his decision was not credible was a reasonable determination of the facts in light of the evidence.  This Court is required to defer to a state court's factual finding unless a habeas petitioner can rebut that finding with clear and convincing evidence.  Petitioner has not met that burden.

With respect to petitioner's claim under § 2254(d)(1), neither the trial court nor the Appeals Court acted contrary to, or unreasonably applied, clearly established federal law as

determined by the Supreme Court. Clearly established law protects a criminal defendant's fundamental right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 52-53 (1987). A defendant's waiver of the right to testify must be knowing and intelligent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241 (1973).

However, there is no clearly established federal law holding that the Constitution requires a trial judge to grant a new trial simply because a defendant alleges that he did not fully understand the consequences of his prior waiver. Indeed, the Supreme Court has never held that a trial court must even inquire of a defendant whether he understands his right to testify, let alone confirm that his answers are based on a complete understanding of all possible consequences. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). Petitioner has not cited to any clear statement of federal law from which he contends the state court has improperly deviated. Accordingly, he has not established that the state court's decision is contrary to, or involves an unreasonable application, of clearly established federal law.

To the extent that petitioner challenges both the state court's decision and the Magistrate Judge's report because they placed the burden on him to establish that his waiver was invalid, his challenge is unavailing. Petitioner cites to *Johnson v. Zerbst*, 304 U.S. 458 (1938) for the proposition that clearly established federal law requires courts to presume that the waiver of a defendant's right to testify is invalid. He contends that by placing the burden on him to establish the invalidity of the waiver, the state court's decision violated that requirement.

As a threshold matter, this Court notes that *Johnson* addressed the Sixth Amendment right to counsel, not the right to testify on one's own behalf. Thus, it does not appear that the standard in *Johnson* is even applicable. Furthermore, *Johnson* does not stand for any such

mandatory presumption. In that case, the Supreme Court addressed the conviction of a man who had never been offered an attorney by the trial court, had been denied one by the District Attorney, and who apparently was never informed of his right to counsel. The Supreme Court, in finding that he had not knowingly waived his right to an attorney, stated that courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson*, 304 U.S. at 464. The Court further stated that it "[did] not presume acquiescence in the loss of fundamental rights." *Id.* The Court did not, however, announce a presumption of invalidity, let alone one applicable to this case. Thus, petitioner has not cited to any clearly-established Supreme Court law governing the state-court standard of review, and the Appeals Court's decision could not have been contrary to, or an unreasonable application of, any such law.

Next, petitioner challenges the report's conclusion that the trial court did not err by refusing to hold an evidentiary hearing. He has not cited any constitutional right to an evidentiary hearing under these circumstances. Thus, there can be no constitutional defect in the court's decision not to provide one.

Finally, petitioner objects to the report's determination that he waived any argument related to ineffective assistance of counsel. Although he has previously argued that his waiver of his right to testify was invalid because he did not understand—in part because counsel did not adequately explain—the consequences of the decision, he has not at any point set forth a separate inadequate assistance of counsel claim. That claim is therefore waived.

Accordingly, upon *de novo* review, this Court finds that the petitioner's claim that his waiver of his right to testify was invalid is without merit.

## C. Denial of Petitioner's Motion to Suppress Identification

Petitioner contends that the trial court erred in denying his motion to suppress the line-up identification by EW. He contends that the line-up was impermissibly suggestive and violated his due process rights.

The Appeals Court reviewed the merits of petitioner's claim, and determined that he "has not met his burden of showing by [a] preponderance of the evidence, when the totality of the circumstances are considered, that [the victim] was subjected by the State to an identification that was unnecessarily suggestive and conducive to irreparable misidentification, such as would deny him of due process of law." *Cormier*, 2009 WL 2525164, at *2. The Magistrate Judge determined that the state court's decision should be reviewed deferentially, and that petitioner had not met his burden of establishing that the conclusion was based on an unreasonable application of clearly established federal law. Petitioner objects to both findings.

Deferential review is appropriate where, as here, the state court judge expressly recognized that there was a federal constitutional right at issue, and stated that petitioner's "due process rights" had not been violated. Under that deferential review, petitioner has not met his burden of demonstrating that the state court unreasonably applied clearly established federal law. Supreme Court precedent dictates that, in determining whether an identification violated due process requirements, a court must determine whether, based on the totality of the circumstances, the procedure was impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 196 (1967). The Appeals Court carefully considered the circumstances of the line-up before determining that they were not "unnecessarily suggestive" or likely to cause "irreparable misidentification."*Cormier*, 2009 WL 2525164, at *2. That determination is a reasonably application of clearly established

federal law.

Accordingly, petitioner's claim that the denial of his motion to suppress violated his due process rights is without merit.

### D. **Denial of Motion to Sever**

Finally, petitioner contends that the trial court's denial of his motion to sever the charges involving EW violated his due process rights.

Petitioner challenged the denial of the motion to sever on direct appeal, and the challenge was adjudicated on its merits. The Appeals Court affirmed the trial judge's denial of the motion to sever. It found that "[t]he judge's decision was warranted. Both victims were prostitutes, both were picked up by the defendant in Chinatown in a Ford Explorer, both were driven to secluded locations where they were beaten on the face with the defendant's fists." *Cormier*, 2009 WL 2525164, at *6. The Magistrate Judge reviewed that decision deferentially, and determined that it was not an unreasonable application of clearly established federal law. Petitioner objects both to the Magistrate Judge's standard of review and her ultimate conclusion.

The Appeals Court's decision does not cite to any federal cases; however, it does cite to a case that states that, to prevail on a claim of misjoinder, the defendant must prove that "prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." *Commonwealth v. Pillai*, 445 Mass. 175, 180 (2005). Although the court cites to a state case, that standard is identical to that set out by the Supreme Court. *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). Thus, the Appeals Court reached the merits of petitioner's federal claim, and this Court will review its determination under the deferential standard.

Petitioner does not cite to any Supreme Court case setting forth clear standards for when

misjoinder is so prejudicial as to cause a constitutional violation.  Rather, clearly established federal law simply states that misjoinder may be a constitutional violation if it prevents a defendant from obtaining a fair trial.  Here, the state court considered the circumstances of the case, and determined that the offenses were sufficiently related to justify trying them in one case.  While petitioner may disagree with that determination, he has not demonstrated that it is an unreasonable application of any clearly established federal law.

Accordingly, petitioner's claim that the denial of his motion to sever violated his due process rights is without merit.

## VII.   Conclusion

For the foregoing reasons, upon *de novo* review, petitioner's objections to the Report and Recommendation of the Magistrate Judge are overruled, and the Report and Recommendation is accepted by the Court pursuant to 28 U.S.C. § 636(b)(1).  The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.  This matter is accordingly DISMISSED.
**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  June 21, 2013